IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DONNA CORBELLO | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 1:07CV985 |
| v. | § | |
| | § | |
| THOMAS GAETANO DEVITO | § | JUDGE RON CLARK |
| | § | |
| *Defendant.* | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE

Plaintiff Donna Corbello filed this declaratory judgment action against Defendant

Thomas Gaetano DeVito, seeking declarations under the federal Declaratory Judgment Act, 28

U.S.C. § 2201, and the Copyright Act of 1976, 17 U.S.C. §§ 101 and 201, regarding authorship

and associated rights to a work based on DeVito's life story and allegedly co-authored by

Corbello's late husband Rex Woodard. DeVito filed the instant motion to dismiss for lack of

personal jurisdiction or venue under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) or, in the alternative, to

transfer venue under 28 U.S.C. § 1404(a).

Because the court finds that transfer would be in the interests of justice, the court will

grant DeVito's motion and transfer this case to the United States District Court for the District of

Nevada, Las Vegas division.

### I. Background

Corbello is the widow of Rex Woodard, an attorney who resided in Beaumont, Texas

until his death in 1991. Woodard also authored several articles in the early 1980s about the

1

musical group the Four Seasons.  The parties dispute who initiated the contact, but sometime in 1988, Woodard and DeVito, an original member of the Four Seasons, discussed the possibility of Woodard writing a book on DeVito's life.  Sometime in November 1988, Woodard traveled to Las Vegas, Nevada to speak with DeVito in person.  Following this meeting, Woodard sent a letter to DeVito dated December 1, 1988 which stated that Woodard agreed to write DeVito's biography.  According to Woodard's letter, the two would be listed as co-authors of the work, but DeVito would retain "absolute and exclusive control over the final text of the book."  Pl. Compl., Ex. 7 [Doc. # 1].  The letter also stated that the two would share equally in any profits arising from the book, and is signed by DeVito under the heading "Approved."  *Id.*

The parties dispute a number of facts about DeVito and Woodard's relationship, including how often DeVito and Woodard were in contact by telephone and/or letter; how many times DeVito traveled to Texas to meet with Woodard over the next two years; and whether the purpose of the trip or trips was related to the book or merely for social purposes.

Woodard completed the book in January 1991, but was unable to find an agent or publisher.  He died on May 25, 1991.  Corbello and Woodard's sister, Cindy Woodard Ceen, continued Woodard's attempts to find a publisher until September 2005, when they allegedly contacted DeVito for assistance.  DeVito's attorney subsequently contacted Ceen in November 2005, allegedly opining that the book was not saleable even in light of the fact that the musical *Jersey Boys* had opened on Broadway that month.

Corbello commenced this suit on December 28, 2007 after allegedly discovering that DeVito had copyrighted, as sole author, a book in January 1991 identical to that written by Woodard and that this book had formed the basis for the *Jersey Boys* musical.  The suit seeks

2

federal declaratory relief, including a declaration of co-ownership, entitlement to an accounting

for profits from DeVito, and an accounting under state law pursuant to that entitlement.

Additionally, Corbello seeks damages arising from the breach of the December 1, 1988 letter

agreement.  DeVito filed the instant motion to dismiss or transfer venue on February 12, 2008.

## II. Applicable Law and Analysis

DeVito has moved in the alternative for: (1) dismissal for lack of personal jurisdiction

under Fed. R. Civ. P. 12(b)(2); (2) dismissal and/or transfer for improper venue under Rule

12(b)(3)[1]; or (3) transfer of venue in the interest of justice under 28 U.S.C. § 1404(a).

As a general rule, where a Defendant simultaneously challenges both personal jurisdiction

and venue, the district court should ordinarily consider the jurisdictional issue first.  *See, e.g.,*

*Optimum Return LLC v. CyberKatz Consulting, Inc*., 2004 WL 827835 (N.D. Tex. Mar. 26,

2004)(considering personal jurisdiction challenge before improper venue in a copyright case).

However, this is not a rigid rule:

> The question of personal jurisdiction, which goes to the court's power to exercise control
> over the parties, is typically decided in advance of venue, which is primarily a matter of
> choosing a convenient forum. . . On the other hand, neither personal jurisdiction nor
> venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for
> both are personal privileges of the defendant, rather than absolute strictures on the court,
> and both may be waived by the parties. . . Accordingly so, when there is a sound
> prudential justification for doing so, we conclude that a court may reverse the normal
> order of considering personal jurisdiction and venue.

*Leroy v. Great Western United Corp*., 443 U.S. 173, 180, 99 S. Ct. 2710, 2715 (1979). Several

courts have found that where the venue issue renders the personal jurisdiction problem moot,

thus avoiding the need to address constitutional questions, consideration of venue before

---

[1]Although DeVito does not specifically provide a basis for transfer in the event venue is
found to be improper in the first instance, the applicable provision is 28 U.S.C. § 1406(a).

3

personal jurisdiction is appropriate. *See, e.g., Assetworks, Inc. v. City of Cincinnati*, 2003 WL

25463096 at \*5, n.49 (N.D. Tex. Mar. 31, 2003); *Wojtunik v. Kealy*, 2003 WL 22006240 at \*2

(E.D. Pa. Aug. 26, 2003).  Because analysis of the venue question in this case compels the

conclusion that transfer to the District of Nevada is warranted, the court addresses this issue first

and need not resolve the constitutional questions raised by DeVito's personal jurisdictional

challenge.

A.  Motion to Dismiss/Transfer for Improper Venue Under Rule 12(b)(3) and Section 1406(a)

   *1.  Standard of review*

   Fed. R. Civ. P. 12(b)(3) states that a party may move the court to dismiss the action for

"improper venue."  Once Defendant has raised the improper venue issue by motion, the burden

of sustaining venue will be on Plaintiff.  *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d

514, 523 (S.D. Tex. 2001). Plaintiff may carry this burden by establishing facts that, if taken to

be true, establish proper venue.  *Id.*  The court will accept those undisputed facts in Plaintiff's

pleadings to be true, and resolve any conflicts in favor of Plaintiff.  *Id.*  If venue is improper in

the first instance, the court may either dismiss or transfer the suit in the interests of justice

pursuant to 28 U.S.C. § 1406(a).

   *2.  Analysis*

   Corbello's Complaint raises two possible grounds for venue in this District, 28 U.S.C. §§

1391(b) and 1400(a).  Section 1391(b)(2) states that a civil action not founded entirely on

diversity jurisdiction may be brought only in "a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred."  Taking the undisputed facts in Corbello's

Complaint to be true and resolving all disputes in her favor, a substantial part of the events or omissions giving rise to her claims occurred in the Eastern District.[2]

Taking Corbello's allegations as true, DeVito reached out to Woodard in Texas from his home in Nevada and asked him to work on this project.  Woodard traveled to Nevada, with the understanding that he would return to Texas to write the work.  DeVito requested that Woodard draft an agreement regarding the book, and returned that signed agreement to Woodard via U.S. mail.  While the book was actually being written by Woodard in Texas, DeVito was involved in the writing project and directed numerous telephone calls and letters to Woodard's Texas office to discuss the work.  DeVito visited Woodard in Texas at least once during the writing of the book, and continued to monitor Woodard's efforts in attempting to obtain an agent or publisher even after the book was finished.

In short, resolving all factual disputes in Corbello's favor, DeVito unilaterally solicited a long-term relationship with Woodard, a Texas resident, for financial gain.  Under an agreement which specifically contemplated an on-going relationship between the parties, Woodard wrote the book which forms the core of this dispute in Texas.  Correspondence was exchanged between the parties in Nevada and Texas, and at least one visit to Texas was made by DeVito over the course of this relationship. Under these facts, a substantial portion of the events or omissions giving rise to Corbello's claims occurred in this District and venue is proper here in the first instance. *See, e.g., Traynor v. Liu*, 495 F. Supp. 2d 444 (D. Del. 2007)(venue was proper in

---

[2]The court need not decide whether venue lies in this District pursuant to Section 1400(a), which applies to copyright lawsuits and states that suit may be brought "in the district in which the defendant or his agent resides or may be found," because venue is proper under Section 1391(b)(2).

Delaware district court where Defendant contacted Plaintiff in Delaware on numerous occasions, sought her assistance with business matters, began discussing the possibility of a business partnership in Delaware, and asked Plaintiff to use her business contacts to solicit possible business for her art gallery from individuals within the district); *Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085 (N.D. Cal. 2003)(venue was proper in Northern District of California where a substantial portion of the performance under a licensing agreement occurred there).  The court will therefore deny DeVito's motion to dismiss for improper venue.

B.  Motion to Transfer Venue Under Section 1404(a)

　　*1. Standard of Review*

　　Section 1404(a) provides that a district court may transfer a civil action to any district in which it might have been brought "[f]or the convenience of parties and witnesses," and "in the interests of justice."  The goal of Section 1404(a) "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964).  The threshold determination to be made under Section 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought.  *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003), *cert. denied*, 540 U.S. 1049, 124 S. Ct. 826 (2003); *In re Volkswagen of America, Inc.*, 506 F.3d 376, 380 (5th Cir. 2007).[3]

_____

　　[3]The court notes that the Fifth Circuit's opinion in *In re Volkswagen of America, Inc.* was a re-hearing panel opinion, superceding an earlier per curiam opinion that had been withdrawn (*In re Volkswagen of America, Inc.*, 223 Fed. Appx. 305 (5th Cir. 2007)).  The Fifth Circuit subsequently granted rehearing *en banc*, *see In re Volkswagen of America, Inc.*, 2008 WL 400236 (5th Cir. Feb 14, 2008), which had the effect of vacating the panel opinion.  *See Byrne v. Butler*, 845 F.2d 501, 507 (5th Cir. 1988). As recently noted by the court in *Aloft Media, LLC v. Adobe Sys., Inc.*, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008), the vacated opinion "appears to

If so, the court's analysis turns to the convenience of the parties and the witnesses. *Action Industries, Inc. v. United States Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).   This determination involves examining several private and public interest factors, none of which are given dispositive weight individually. *Id.*   The movant bears the burden of proof in demonstrating that a transfer is warranted. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

In determining whether an action should be transferred under § 1404(a), the court must consider several private and public interest factors. *Action Industries,* 358 F.3d at 340.   The private interest factors include: (1) plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and availability of compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *Id.* at n.8. The public interest factors consist of (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.*

---

adopt a slightly lower threshold favoring the party moving for transfer," and, as a result, the *Aloft Media* court afforded the moving party the "benefit of the doubt" in its analysis. *Id.* at *2.  The *Aloft Media* court also analyzed the motion to transfer under both standards (i.e., the now-vacated panel decision standard and the standard which existed prior to that opinion), at least in part because the parties raised the issue in that case.  Here, neither party references this problem in its brief.  In light of the Fifth Circuit's February 14, 2008 decision, this court will therefore analyze DeVito's motion under the law as it existed before *In re Volkswagen of America, Inc.*, 506 F.3d 376, 380 (5th Cir. 2007).  At the same time, the court notes that analysis under the standard set out in the now-vacated panel decision would, if anything, only bolster the court's decision to transfer venue.

*2. Analysis*

a. **Whether the suit could have been brought in Nevada district court**

28 U.S.C. § 1391(b)(1) states that in a case not solely based on diversity, suit may be brought in any district in which the Defendant resides.  In this case, because DeVito resides within the district he seeks transfer to, venue would be proper in the District of Nevada, Las Vegas division in the first instance.[4]

b. **Plaintiff's choice of forum**

Corbello chose to file her suit in the Eastern District, which is also where she resides. This factor does weigh somewhat against transfer; however, even though Corbello's choice of forum is entitled to some deference, this factor alone is neither conclusive nor determinative.  *In re Horseshoe Entertainment*, 337 F.3d at 434.

c. **The convenience of parties and witnesses**

Corbello does reside in this district.  It would therefore be more convenient for her if the suit was not transferred. However, the burden on DeVito to defend in Texas is considerable. DeVito will be eighty years old next month.  He submitted an affidavit from his physician attesting to a host of serious illnesses, including respiratory distress and chest pain when traveling long distances.  He has been advised by his physician not to travel.  Def. Reply, Ex. C at ¶¶ 3-5 [Doc. # 19].  Requiring DeVito to travel over 1500 miles at his age

---

[4]As discussed in more detail *infra*, Corbello argues that under controlling Ninth Circuit law, her copyright ownership and accounting causes of action do not arise under the Copyright Act.  In the event that she is correct and subject matter jurisdiction in the District of Nevada would be based entirely on diversity, venue in that district is still proper in the first instance under 28 U.S.C. § 1391(a)(1).

and in his physical condition would be very burdensome, and likely to further strain his declining health.  This factor weighs heavily against exercising jurisdiction.[5]

### d.  **The place of the alleged wrong**

Some of the events which give rise to Corbello's claims did occur within this District, sufficient to make venue proper in the first instance.  At the same time, the initial meeting between DeVito and Woodard regarding the book took place in Nevada.  DeVito's portion of the correspondence between the two originated in Nevada, and Woodard directed telephone calls and letters to Nevada during the writing process.  Additionally, Corbello's claims include an accounting of profits made from the book and the *Jersey Boys* musical which is allegedly based on it. Any alleged negotiations involving DeVito and third parties regarding his interest in the book took place outside of this District.  In short, although some activities took place in Texas, an equal or greater number did not.  This factor weighs slightly in favor of transfer.

### e.  **The cost of obtaining the attendance of witnesses and availability of compulsory process**

The witnesses in this case are widely scattered.  The costs and difficulty of obtaining attendance are no greater in Nevada than they would be in Texas.  This factor is neutral.

### f.  **The accessibility and location of sources of proof**

Because the events surrounding this case took place in both Nevada and Texas, evidence is likely located in both places.  At least some of this evidence would not be found in the district

---

[5]The court also notes that the potential witnesses in this case are far-flung.  In their Joint 26(f) Report, the parties identified over thirty witnesses whose depositions would need to be taken. See Doc. # 26 at pp. 6-7.  These witnesses reside in Nevada, Texas, New York, Connecticut, Tennessee, and California.  Because a large number of potential witnesses would be inconvenienced by travel regardless of whether the case is heard in Nevada or Texas, this consideration is neutral.

where the case was being heard regardless of whether that district was located in Nevada or Texas.  This factor is also neutral.

### g.  **The possibility of delay and prejudice if transfer is granted**

Corbello argues that the median time from filing to trial in the District of Nevada is about ten months longer than it is in this District.  While this factor does weigh slightly against transfer, the court notes that the parties have already exchanged initial disclosures and submitted their Joint 26(f) Report in this case.  Because the parties need not duplicate discovery they have already conducted, it is possible that this case could reach trial in the District of Nevada more quickly than normal.  Additionally, recent increases in the number of complex cases filed in this District make old statistics on disposition time less meaningful.

### h.  **The administrative difficulties caused by court congestion**

DeVito asserts that the caseloads in the Eastern District of Texas and the District of Nevada are historically comparable.  This district has a greater weighted caseload and one less judge to handle it.  This factor weighs slightly in favor of transfer.

### i.  **The local interest in adjudicating local disputes**

While Texas does have an interest in litigating breach of contract actions that arise under its laws and which affect its citizens, Corbello herself argues in another context that the primary focus of her suit is to obtain declaratory relief under federal copyright law. Texas's interest in adjudicating a conflict arising under federal law is no greater than that of Nevada.[6]  This factor weighs only slightly against transfer.

---

[6]Notwithstanding the following discussion on Ninth Circuit law, suits for a declaration of co-ownership and duties to account are considered to arise under federal, rather than state, law in the Fifth Circuit.  *See Goodman v. Lee*, 815 F.2d 1030, 1031-32 (5th Cir. 1987).

10

        j. **The unfairness of burdening citizens in an unrelated forum with jury duty**

As noted above, the events giving rise to Corbello's claims occurred in both Texas and Nevada.  As a result, it would not be burdensome to ask Nevada citizens to hear a case involving events that occurred within their district, especially when one of the parties is also a Nevada citizen.  This factor is neutral.

        k. **The avoidance of unnecessary problems in conflict of laws**

Corbello's argument that she could not seek similar relief in Nevada due to conflict of law problems is inapposite.  Corbello cites *Oddo v. Ries*, 743 F.2d 630, 633 n.2 (9th Cir. 1984) for the proposition that in the Ninth Circuit, "a suit to bring the co-owner of a copyright to account does not fall within the district court's jurisdiction over actions arising under the copyright law," and argues that under this principle, a Nevada district court would be unable to hear her claim for a declaration that she is a co-owner and therefore entitled to an accounting from DeVito. *See also Dead Kennedys v. Biafra*, 37 F. Supp. 2d 1151, 1153 (N.D. Cal 1999)("An action  for an accounting or determination of ownership as between alleged co-owners is founded in state law and does not arise under the copyright laws.").  However, in *Dead Kennedys*, there was no diversity of citizenship between the parties.  In other words, the only way the court would have had subject matter jurisdiction in that case was if federal question jurisdiction existed.[7]

---

[7]The citizenship of the parties is not provided in *Oddo*.  However, no diversity existed between the parties in *Harrington v. Mure*, 186 F. Supp. 655 (S.D.N.Y. 1960), the case relied upon by the *Oddo* court for the proposition that co-ownership and accounting actions do not arise under federal copyright law.

A federal court has the power to hear an action pursuant to the Declaratory Judgment Act if the case is otherwise within its subject matter jurisdiction and involves an actual controversy. 28 U.S.C. § 2201(a); *see also Seattle Audubon Soc'y v. Mosley*, 80 F.3d 1401, 1405 (9th Cir. 1996).  Jurisdiction over a declaratory judgment action may be based on diversity jurisdiction. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147-48 (9th Cir. 1998).  Where, as here, the parties are diverse[8], the fact that the Ninth Circuit does not consider a cause of action between purported co-owners of a copyright for an accounting to arise under federal copyright law is irrelevant, since another basis for subject matter jurisdiction exists.  Corbello could conceivably bring suit in a Nevada federal court seeking her declarations of ownership and for an accounting under state law, as is apparently required in the Ninth Circuit.  Although Corbello may have to rewrite her Complaint, the court does not agree that one or more of her claims would necessarily be foreclosed in the Ninth Circuit.  Corbello could therefore seek relief in a Nevada federal court just as she could in Texas.  This factor is neutral.

On balance, the court concludes that it would be in the interests of justice to transfer this case to the District of Nevada.  It would be unduly burdensome to require DeVito, an eighty year old man in seriously declining health, to travel more than1500 miles to Texas in order to adjudicate this suit when Corbello could obtain the relief she seeks in a Nevada district court. Although the court is mindful that Corbello is a Texas citizen and that her breach of contract claim arises under Texas law, the enormous strain which would be placed on DeVito's health

---

[8]According to Corbello's Complaint, she is domiciled in Texas, DeVito is domiciled in Nevada, and Corbello claims damages in excess of five million dollars for her breach of contract claim alone.  Pl. Compl., ¶¶ 1-2, 69 [Doc. # 1].

outweighs these facts and requires the court to grant DeVito's motion to transfer in the interests of justice.

C.  Motion to Dismiss For Lack of Personal Jurisdiction Under Rule 12(b)(2)

Because the court finds that transfer is warranted in the interests of justice, it need not consider whether this court has personal jurisdiction over DeVito.

IT IS THEREFORE ORDERED that Defendant Thomas Gaetano DeVito's Motion to Dismiss or, in the Alternative, to Transfer Venue [Doc. # 7] is GRANTED. This case shall be transferred to the United States District Court for the District of Nevada, Las Vegas division.

So **ORDERED** and **SIGNED** this **19** day of **May, 2008.**

_____

Ron Clark, United States District Judge